Good morning. May it please the court. I am Kelsey Heilman. I represent the plaintiffs in this case. When an Oregon driver with money commits a traffic offense, she pays a fine. When an Oregon driver living in poverty commits a traffic offense, she loses her driver's license for 20 years. This two-tier punishment system is unconstitutional because it penalizes poor Oregonians more harshly due to their poverty. Plaintiffs in this case are mothers with young children, seniors with disabilities, and caretakers for elderly parents. They all live below the poverty line, they all committed minor traffic violations, and they all lost their licenses despite trying to pay what they could. For more than 60 years, the Supreme Court has said that states may not punish people more harshly due to their poverty. To prevent that result, the Griffin-Bearden case line says that heightened scrutiny applies when a state discriminates on the basis of wealth in the administration of criminal justice. The Griffin-Bearden cases have never been disavowed. They have only been expanded. Oregon's two-tier punishment scheme for traffic violations punished plaintiffs more harshly because they are poor. Their suspensions are unconstitutional because the state never considered whether plaintiffs were indigent, and never considered whether alternative means like a lower fine or installment payments would achieve the state's goals. Plaintiffs in this case have asserted a number of claims, and I'm happy to answer any questions the panel may have on any of them, but I plan to focus my remarks today on what we view as perhaps the most important dispute in this case, which is whether heightened scrutiny applies under the Bearden-Griffin line. The ordinary rule is that rational basis review applies unless there's a suspect classification or a fundamental right at stake. But the Bearden-Griffin line say that heightened scrutiny applies when more severe punishment is triggered by inability to pay a criminal fine or fee. This special concern with the intersection between wealth-based discrimination and punishment makes sense because we punish choices. License suspension is imposed because a person doesn't pay a fine. Bearden and Griffin say the state can punish a person for not paying a fine or fee only if paying is a choice. We specifically asked you to address certain questions here. I don't know why I have to yell because I haven't had to yell. To me, they really are central because the problem here is that the Oregon scheme seems extreme because, in fact, according to the record, made it to be. I'm not hearing your question. I don't know why, but now we really do have a problem because it's a different problem than we've been having. Can you hear me now? Yes. We had asked you to address certain aspects of the Oregon scheme, and it seems to me that you can't go forward without at least acknowledging that. All of these plaintiffs, in fact, were offered a pass, as I understand it. There also was this new waiver provision driving for certain purposes. In analyzing the case, I think you need to wrap those into your analysis and not keep saying that there's necessarily a 20-year suspension or necessarily no give for people who can't pay. There is some give, and it's very hard to figure out what it is. Your Honor, you mentioned that you, the court, had asked us to focus on specific issues. Yes, I thought we – well, maybe it never happened. I'm sorry. I don't know. No. We thought we issued a focus order. I'm sorry. The questions were basically, how does the Oregon system for either – for the court either limiting the payment of the fine or creating payout systems operating? How does it work into the analysis? And also, the recent statutory amendment that allows a hardship waiver for these kinds of suspensions. Thank you, Your Honor. I'm prepared to address both of those questions. Let's not so much address them as wrap them into your analysis because you can't assume away the fact that there is no accommodation or some sort of accommodation. So, with respect to payment plans, Your Honor, it is undisputed that Oregon law does not require that anyone be offered a payment plan. It is true that we have alleged that many of our plaintiffs were offered payment plans. How about all of them? I think we have at least Rebecca Heath, Your Honor. I do not believe we have allegations about her being offered a payment plan. But the constitutional problem with those payment plans is that they were one-size-fits-all payment plans that did not take into account individuals' ability to pay. And each of our plaintiffs have alleged that they could not afford the payments at the level at which they were offered. They have also alleged that we've also alleged that there are often fees to pay up front and to enter payment plans and that the amount owed increases when a person enters into a payment plan. The 11th Circuit case, Jones, that we wrote to about in a 28-J letter, addressed how it affects the analysis when there is a discretionary system available that may sometimes offer a way for some individuals to pay their fines and fees and concluded that a discretionary system does not cure the constitutional violation because the system does not have built into it a right of consideration of ability to pay. What about the hardship permit under 807.240? Why doesn't that provide enough of a safety valve? Your Honor, at this point we don't know if that provides enough of a safety valve because the changes to the statutory scheme are so new. So because of the procedural posture of this case and when this case was filed and pleaded, there is no information in the complaint and we have no factual record, of course, on a 12b motion to dismiss that would allow the court to evaluate how the availability of hardship permits could affect plaintiffs' claims. But that's Oregon law today, so don't we have to analyze the scheme as it exists today? And if that provision is there, it seems to have a significant effect on what you're arguing. I think the only way that the change to the law could affect the court's evaluation on this record, Your Honor, would be if the court were to conclude that the changes to the statutory scheme mooted plaintiffs' claims. Well, it doesn't have to moot it, but it might affect the constitutional analysis you're asking us to follow if the state provides a significant hardship mechanism that covers a lot of the cases that you claim lead to constitutional violations. Your Honor, I think it no doubt would inform that analysis on remand with the benefit of discovery and information about how the hardship permit application process works, that the hardship permits, like the payment plans, are 100% discretionary under the terms of the statutory scheme. So, our plaintiffs do not have a guarantee of a right to the hardship permit, even if they meet the criteria under which the statute says such a permit may be issued. Can you explain the authority that you're citing to assert that the right to a driver's license is a constitutionally protected right? Yes, Your Honor. There are a number of cases that make clear that the continued possession of a driver's license once issued is an important property right. So, the cases that we've cited include Bell v. Burson, Mackey v. Montrem, and Dixon v. Love.  But don't they have, the people who have these driver's licenses, can't they have access to other means of working and so forth by other means other than having a driver's license? We have alleged that they cannot, Your Honor. In fact, we've alleged specifically that not having a driver's license makes it either impossible or very difficult, for example, walking seven miles each way to work in order to reach places of employment. We've also alleged that public transportation is not an option for some of our plaintiffs who live in more rural areas of the state and is an incredibly burdensome option for other plaintiffs. I think it would be helpful if you would address the state's asserted interest in maintaining, we have heightened, I gather what Brearden is, is kind of slightly heightened scrutiny. It's not quite intermediate scrutiny and it's certainly not strict scrutiny, but it's something, it's sort of rational basis plus or something. And it certainly has, as a strong element, what the state's interests are and whether they are cognizable. So, I think you should address those. Yes, Your Honor. So, there are two interests that have been raised through the course of this litigation. The first is the interest in promoting compliance with traffic laws and the second is the interest in collecting debts owed to the state. And in evaluating both of these interests, it's important to focus in on what the classification is in order to evaluate whether that relationship satisfies the heightened form of scrutiny that Brearden has. How can the state satisfy the first interest if these are fine only offenses and if a fine is imposed, you're going to say that, you know, I can't be required to pay it if I'm unable. What sanction does the state have to ensure, you know, that there aren't either parking, but some of these, I believe, involve like running traffic lights. What kind of resources or penalties does the state have available if it's not going to be allowed to collect fines? Well, Your Honor, the Supreme Court in both Tate and Brearden specifically addressed what sort of alternatives would be available and they suggested that in almost all cases other alternatives would be available. So, there's a footnote in Tate that addresses different systems of approaching the fine in the first place. Both cases talk about installment payments. Brearden talks about the possibility of community service. So, there are… But, Ms. Fissings, first of all, go back to the installment payments. I'm so sorry. Suppose the statute were changed so that it was clearer that A, everybody is entitled to apply for installment payments and told how to do it, and B, that there would be an individualized determination. Would that cure the problem? Yes, Your Honor. The relief we are requesting is for the state to stop suspending licenses until there is a guarantee of consideration of ability to pay. Including installment payments, even though you might say, well, I can't even pay $10. Well, I suppose that would have to be evaluated on a case-by-case basis, Your Honor, but this court in Hernandez v. Sessions, a due process case, looked at the importance of considering ability to pay and said that requiring consideration of ability to pay was necessary under the Constitution, even though there would be no guarantee in any single individual case of an affordable payment plan. But, we have in the records, we have this amicus brief from a clinic in Oregon that says that, essentially, when they get involved and they deal with the courts, they get these fines either eliminated or saved. So, is the real problem just that people aren't told what to do? Is that the problem? No, Your Honor. The problem is that different courts are handling this in different wholly discretionary ways. And so, some of them are choosing to waive fines and some are choosing to offer affordable payment plans. Other courts may offer no payment plan at all or may offer payment plans that are at a level that is unaffordable. So, that lack of uniformity that the way that you, whether or not you have a way to avoid license suspension as a low-income individual is completely contingent on where you, in which court you're in across the state. Right now, we have six plaintiffs. And they, as I understand it, all seem to be dealing with courts that did largely give these payments. Right? Is that right? Your Honor, some of the courts offered installment payment plans to some of these plaintiffs and told them there was no other option, even when they told the court they were not able to pay those payment plans. All right. So, here's a second question. You do focus on the 20-year suspension, and that does seem rather long. What about a grade date? I mean, in terms of the governmental interest, what about a gradual suspension? There are other examples of this. I mean, suppose they said, you know, a three-month suspension, and then if you do it again, a six-month suspension. Would that be the same problem or a different problem? Your Honor, I think it would be evaluated under the same framework, but the second factor in Bearden's four-factor test is the extent of the deprivation. So, the means-fit requirement at steps three and four would be different because the extent of the deprivation of this critical right would be less. So, your combination of practical problems is the length of the deprivation. I mean, in terms of responding to the government's interest, the length of the deprivation, the discretionary nature of any accommodations, and what else? I mean, it is true that people who—here you have people who are driving unsafely, and the question is, can the state do anything? And they can't pay the fines. We're going to accept they can't pay the fines. So, to suspend their license is really to suspend their license for not being able to pay a fine. On the other hand, the state has a strong interest in not encouraging scoff laws and in deterring these particular people from driving unsafely. So, is it overall just a fit problem? They've just gone too far in what they've done? The problem, Your Honor, is that the wealthy, identical driver could commit the same unsafe traffic violation every year for 20 years and pay the fine every time and continue— Yes, Your Honor. The state does have an interest in some kind of deterrence. The problem is that—well, so, the assumption that imposing a fine on someone who cannot at that moment pay it does not have a deterrent effect, I think, is flawed. This court in the Rivera v. Orange County Probation Department case acknowledged that the cascading effects of minor offenses that produce a debt and the attendant court appearances, which can lead to all sorts of consequences. So, the plaintiffs do not assert that they have a right to be free of these fines, and the fines would remain in place. They would remain obliged to pay them if and when in the future they have ability to do so. Your Honor, I would like to reserve just a bit of time for rebuttal, so, if I may. Thank you. May it please the Court, Pinesh Shah for the state defendants, when we ask the Court to affirm the judgment of dismissal on this case. I'll start by apologizing because I'm not sure I saw whatever questions the Court— Well, I'm the one to—or we are the ones to apologize because I thought it was sent out, and I don't know why. Okay, so, you know, I'm happy to answer— I told you what it said, and it just— Right, right. So, I'll try to address those if I can. But the key point that I'd like to make today is that plaintiff's concerns demand a legislative solution, not a judicial one. And that's the bottom line in our front-end arguments about justiciability, but also in our back-end arguments about rational basis for review. If there's a constitutional problem, then the courts have a role, so it's not very helpful. Why there isn't a constitutional problem that needs to be solved. Judge Berzon, you're breaking up again. I'm sorry, but he probably can't hear your question. All right. Go ahead. Okay, so, to the extent I heard your question, Your Honor, I think you were saying that if there's a constitutional problem, the courts have a role to solve it. And absolutely, that's true. The question is sometimes about which court and the extent to which a court can solve it. So, rational basis review is a constitutional solution, but it's one that leaves a fair bit of deference to legislatures. And then my first point about justiciability is certainly some court may be able to solve it, but it may not be this court. And so, I'll start with this justiciability point, where our core argument is that any violation here occurred when state courts entered orders requiring suspension of plaintiff's licenses. I hear a lot about state court discretion, and so it seems to me that what plaintiffs are asking for is this court to sit in review of a state court. And that's simply not permitted under the Rooker-Feldman Doctrine. In fact, it seems a lot like… Was it wrong, or do you think it's distinguishable? I didn't understand the argument you presented quite the same way there, or the court didn't address it quite as starkly. I'm not sure about what the exact framework was there, in that if it was Michigan, to what extent the suspensions were generated by the court versus some other arm of the state. But I thought here that it was generated by the court ministerially. That is, there was a court proceeding, or potential court proceeding, having to do with the underlying fine. But once the fine wasn't paid, was there actually a court proceeding? There was a court order, but was that court order appealable, or was there a hearing, or was there any procedure in the court having to do with that order? There was no procedure in that court. Right, so what they were supposed to… I mean, aside from other problems with the Rooker-Feldman, what were they supposed to do in that court? I think that… There was no… I mean, the problem in Rooker-Feldman is that we don't have jurisdiction over appeal from a court, from a state court order when you're supposed to go to state court. But there was no state proceeding to be had here. There's still a state court action. I just think there's no procedure. Yes, and what are you supposed to do about it? So that state court action could be reviewable by a state appellate court or through mandamus. Is it reviewable by a state appellate court? I have no indication it is. It's not a court proceeding. It's a theory of order. Mandamus? It's assertively sent out by clerks without any judicial participation. The statute says that the court does the action, not that the clerk does the action. And certainly, at a minimum, mandamus would be available. And I don't need to… I'm not really interested in belaboring the point if the court's skeptical. I just want to point out that fundamentally here, we have plaintiffs asking this court to ask a state executive agency to ignore an order that originated from a state court. And in our view, that's… Plaintiff's suit seeks review of Secretary Benson's suspension of their licenses regardless of the validity of any state court decision. Isn't that on all fours with this case? It sounds that it is. And if it is on all fours, then we think it's wrong. And we ask this court for a different result. But as I said, I don't need to belabor the point because I'm happy to talk about the merits of the court's unconvinced on this threshold question. That seems wise. So I'll move on. So on the merits, in our view, plaintiffs' claims reduce either explicitly or at least functionally to a request for rational basis review. And in our view, the challenge framework here is not irrational. Plaintiffs seem to repeatedly argue that the license suspensions do not serve the goal of collecting traffic debt. But that argument misses the point because these traffic fines are not an end in themselves. ODOT has no real interest in collecting fines. Its interest is instead in traffic compliance. And for our purposes, it would, in fact, be better if no one violated any traffic laws and we never collected a penny in fines. The point here, as the court seems to recognize, is that the fine serves as a deterrent against traffic violations. And in light of that purpose, the challenge framework must be rational. Well, but you're completely eliding their whole Bearden-Griffin argument. I mean, under the Bearden-Griffin argument, there is some kind of a means. Right. So in our view, Bearden-Griffin doesn't apply to this case because, in our view, Bearden-Griffin is limited, in the narrowest view, to situations where ability to pay or where access to judicial processes is conditioned on ability to pay. Well, that's not true because that wasn't Bearden-Griffin. Okay. I should say either criminal penalties or access to judicial processes. And this is neither. You mean because they're not going to jail? Not just because they're not going to jail. Because clearly a fine should be… Because it's coming out of a criminal process. Well, no. We don't view traffic violations as criminal. We view them as administrative. I mean, in Oregon… It's certainly the court penalizing people for doing something wrong and requiring due process and everything else for that purpose, right? It requires due process, but maybe not the heightened due process inquiry that Bearden-Griffin recognizes. Because, you know, you could say the same thing about, say, if I get fined for cutting a tree without a permit. I don't think that's a criminal proceeding. You get fined. I'm sorry. If I were fined for cutting a tree without a permit. I've done something wrong. I'm fined for it, but that is administrative, not criminal. Bearden-Griffin would not apply to that situation. Bearden-Griffin is limited to criminal situations. And traffic violations are not criminal. Under Oregon law, there are crimes and there are violations. Traffic violations are violations, not crimes. But even if we take a slightly broader view of Griffin-Bearden and not limit it to that, at a minimum, even as this court in Hernandez read MLB, Griffin-Bearden stands for that line of cases, including MLB, stands for the proposition that the state can't condition access to fundamental rights based on inability to pay. And so then the question is, is this a fundamental right? And it isn't. There are cases from this court and from the U.S. Supreme Court holding that driver's licenses are not fundamental rights. And if we don't have a fundamental right, then the Griffin-Bearden analysis simply doesn't apply. Can you distinguish the recent circuit case? Fallon case. Fallon voting case. Right. I mean, voting is absolutely a fundamental right. And in fact, voting and the right to franchise is explicitly recognized in MLB by the Supreme Court as the sort of thing to which Griffin-Bearden would apply. So you're arguing there is no, the fact, I can tell you what bothers me about this. Given the lack of teeth in a pure rationality standard, as opposed to some kind of aggregated, really trying to deter people. I'm sorry, Your Honor. I caught you up to lack of teeth in a rational standard. I'd say 20 years sounds nuts. It seems completely disproportionate and out of whack to whatever you're trying to accomplish. You would think you'd want to do a gradated suspension, not 20 years for the first time. They don't pay their fine. Number two, the whole system for, or non-system for accommodating the failure to pay, seems entirely discretionary. There's no notice of it. There's no system for it. It seems to happen a lot, but it doesn't, it would seem so relatively simple to systematize it in some way that it was usable and predictable and individualized and so on. And for at least those two reasons, it seems to me that the scheme is not very well adjusted to, or even it's not at all adjusted to what's trying to be accomplished. If you think what's trying to be accomplished is a deterrence and not just getting the fines and not simply punishing people for not paying fines. And just to be clear, Your Honor, that question is premised on rational basis review or some other kind of... Well, I'm saying either one. I understand that in rational basis review, I suppose you're arguing that we can make it 100 years and that would be fine too. As long as we can say that we were trying to deter people from driving unsafely, that there's no punishment for any overkilling. Is that basically a rational basis review? A rational basis review, yes. Our argument is, you know, even if this court can say there are better ways to achieve this goal, that's not really what this court does or any court does in a rational basis review. That's about... So you don't have to tell me why it's okay to do this for 20 years, why that's rational. It doesn't matter. I can make an attempt to do so, but at the outset, I don't think that at rational basis review, this court can say, well, six years is good, seven years is bad, eight years is good, 20 years is bad. But if I can try, I'll say that, you know, there remains the ability to get your license before that 20 years if you can pay. And if you can't do that, then it seems that if you get your license back a year after you have had it, or some shorter period than 20 years after you've had it suspended for failure to pay, there remains no reason for you to continue obeying the law, because if you get fined again, you don't have to pay. But what about wealthy people who pay their fine? That's true of them too. It's more true of them, i.e., all they have to do is pay again. So on a rational basis review, I don't think that our court can say that, you know, this doesn't work in some situations. So long as, in general, it bears some relationship to its goal and has some meaningful effect, that's enough to survive rational review. And then I think to the extent that Your Honor is asking about some other heightened kind of standard, I think the simplest answer or the first answer that we'll have is that no heightened standard applies here, because as we said, Griffin-Bearden doesn't apply because there's no fundamental right. And even if Griffin-Bearden did apply, you know, I think Griffin-Bearden has this sort of sliding scale, this sort of elastic kind of review. And so to the extent that Griffin-Bearden is even applicable to something less than a fundamental right, then the level of scrutiny that would apply to a situation involving something less than a fundamental right is going to be less rigorous or less strict. And in our view, that would become the same thing as rational basis review, because any other approach would sort of upend the hierarchy of constitutional review that we have. And the long line of cases that says in the absence of a fundamental interest, constitutional review is for rational basis. Well, suppose we thought there were a problem here or there would be a problem if there were no adjustment mechanism or people who actually and provably couldn't pay. But on the other hand, there seemed to be this amorphous waiver or restriction or payment plans system that some courts are doing. And on the other hand, there's also this new statute. So how, what should we do with those? I mean, given the new statute has, when was it enacted and how long has it been in effect? The Hartford statute was enacted, I think, in 2000. I have it in my brief. I'm sorry for not having it handy. And long enough that a record could be made on how it's operating? Maybe so, yeah. I think certainly in the last couple of years it was expanded. I think there was one version of it that was expanded. And is it in fact discretionary? Is it totally discretionary? Are there any standards for its application? For the hardship review? There are standards. There's criteria that have to be met. I don't know that I read it as discretionary, but I'm sorry. Again, I apologize. It says may. It says if you meet the criteria, the department may, which is usually not mandatory. Okay. But to answer the question of how these factor into the analysis, this makes our scheme more rational. To the extent that the 20-year timeframe is something that this court struggles with, that 20-year timeframe has some escape vows, both at the front end in terms of this payment plan that allows you to avoid suspension, and then also at the back end where even if you do get suspended, you have access to a hardship permit in some situations. Is it true that the payment plans are some courts have them and some courts don't have them, and that they're a cutter and so on? Certainly that's what's been alleged. And it is a discretionary thing for courts to employ in their discretion. So, yes, I think it's certainly on the allegations of the complaint, we have to agree or assume that it's not applied to you formally. What's odd here is that we had a preliminary injunction proceeding, so there was some record at that point. And the district court, as I understand it, relied on that record to some degree on these kinds of issues, for example, in denying the preliminary injunction. Is that accurate? Yes. So, therefore, although we're operating on the complaint, we actually have a record of the earlier proceeding. That's correct, Your Honor. So, yes, different courts, as the preliminary injunction proceeding record shows, different courts do take different approaches here. Though I think it's worth noting that the hardship permit, that doesn't go to courts. I think that goes to ODOT. And so that is more centralized, and there's less concern for varied outcomes under that procedure. And even so, if we're looking at whether or not this scheme, taken in its entirety, is constitutionally, or I should say is rational in its organization, creating these safety valves helps make it look more rational. And I don't think that the facts of its implementation undermine that conclusion. Well, it undermines it for a person who is fined in a court which doesn't have, won't give a payment plan. That may be so, but even if it were, it doesn't undermine the rationality of the framework created by the Oregon legislature. That has no standard, and varies by geography. I mean, the standard has to leave some discretion to courts, because every individual... So, yes, but as I understand the allegation, some courts are not exercising their discretion, they're just not doing it. Again, to the extent that that's how courts are implementing it, I guess I have two answers. One is that that doesn't, as I said, affect the rationality of the framework viewed as a whole. And second, it seems to come dangerously close to them actually reviewing state court action if we're complaining about where a court has or has not exercised its discretion. There's some support in the record that anyone has requested this alternate, either a hardship license or a payment plan, and been denied the opportunity to even apply for that? I'm sorry, I missed the beginning. Are you asking, Your Honor, whether there's any evidence of that happening? Yes. I'm not aware of anything, any evidence in the record of that happening, but again, I think part of the problem is that the hardship permit situation framework is relatively new. All right, we're about out of time. You have one minute before 47 seconds. Yes, I think just in closing, I just want to point out that what's rational here is a choice between prioritizing competing goals. There's, on the one hand, sometimes goals about maximizing compliance with traffic laws, or similarly, emissions laws or insurance laws, and on the other hand, you want to minimize financial hardships. What the legislature has done here is try to balance those goals. And to the extent that that balancing has been incorrect, the right solution is for the legislature to adjust that balancing based on a change in voter values. And the solution is not for a court to impose a one-size-fits-all solution as a matter of constitutional law. And for that reason, the court ruled correctly in dismissing the complaint. Thank you very much. Thank you. Thank you, Your Honor. I'm going to briefly address three issues. Hardship permits, the payment plans, and then why a burden applies. With regard to the hardship permits, they might change the contours of this case, but we don't have the evidentiary record to know that yet. They are, as Judge Collins observed, entirely discretionary. We don't know if a single one has ever been granted. The plaintiffs in this case had no opportunity to apply for a hardship permit before— Well, they do now, and you're looking for prospective relief. So maybe we should be remanding for a record on that. I think an evidentiary record is necessary to evaluate the relevance of the hardship permits. That said, they are a post-suspension remedy, and the constitutional infirmity in this case is the failure to provide an ability to pay proceeding. So is it your view that Fowler has wrongly decided we should reject it and create a circuits vote? Well, Your Honor, we do believe Fowler was wrongly decided, and this court is bound by Supreme Court precedents such as Bearden, Griffin, Tate, and the like that the Fowler court did not appropriately apply. The Eleventh Circuit, however, did apply the constitutional theory present in all of those Supreme Court precedents. In the Jones case, by correctly concluding that the Fourteenth Amendment prohibits wealth-based punishment, as in this case. With regard, briefly— But the assertive distinction— And voting is— So how do you respond to that? You're cutting in and out again? Yeah. Sorry, I can't hear you. It's not you, it's me. It's just frustrating because I'm thinking of her. In any event, what I want to know is what the distinction that's made with the Eleventh Circuit case is that it is about voting. That's a fundamental right, and this is not about voting. It's about driving, which is not a fundamental right. So does that just bump you out of Bearden? Or at least make Fowler not informative? No, Your Honor. Voting is— Ask Fowler, the Eleventh Circuit. Yes. Voting is not a fundamental right for ex-felons, who are the plaintiffs in the Jones case and the Eleventh Circuit. The Eleventh Circuit made clear that it was not— the fact that voting is a fundamental right was a secondary alternative grounds for its holding. The primary grounds for its holding did not hinge on voting being a fundamental right, since after all, the Supreme Court has stated you can deprive a felon permanently of their right to vote. What the Eleventh Circuit found is that the long line of Supreme Court precedent we've articulated says you cannot punish, carve out a punishment that poor people cannot avoid. That's the same infirmity in this case. Okay, your time is up. Thank you all. I'm sorry that our proposed focus order didn't materialize. And we'll do it again. Okay. The case of Mendoza versus Fowler is submitted. Thank you all.
judges: Berzon, Collins, Choe-Groves